George **HALTOM** et al., Appellants,

v.

C. B. **LEATHERWOOD**, Appellee.

No. 6030.

Court of Civil Appeals of Texas.
Beaumont.

Jan. 26, 1956.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, W. C. McClain, Conroe, for appellants.

J. Robert Liles, Conroe, for appellee.

WALKER, Justice.

The appeal is from an order overruling a plea of privilege. Plaintiff, the appellee, sued defendants, the appellants, for damages for personal injuries sustained by him in a collision between his own automobile and a truck which was owned by two of the defendants and was driven by the other defendant as the servant of said owners. Plaintiff also sued for damages for the harm done to his automobile. He alleged that the matters for which he sued were caused by various items of negligent conduct on the part of the defendant driver, but this conduct included a violation of Section 93 of Art. 6701d, V.A.T.S. The collision occurred in Montgomery County. Defendants filed a joint plea of privilege, praying transfer to Nacogdoches County as being the county of their domicile, and the plaintiff's controverting affidavit alleged that the trial court had venue of the cause under and by virtue of Subdiv. 9 of Art. 1995, V.A.T.S. The amendment of Subdiv. 9 made in 1953 was enacted after the suit was filed and by its own terms is not applicable to the case. All issues of fact made by the evidence were impliedly determined in the plaintiff's favor by the order appealed from, and the facts so found or proved as a matter of law which pertain to this appeal were the following.

The collision occurred on State Highway 59 during the daytime in the open country, outside of city or town, business or residential district, and at the place of the collision the road was paved with concrete and this pavement was two traffic lanes in width. The truck was made up of a tractor and a trailer, apparently an open one, which carried a load of cement in sacks. This is the plaintiff's description of the load. When the collision occurred, the truck was stopped squarely in its own traffic lane, on the paved part of the road; none of it was on the shoulder of the road, and so it necessarily must have occupied most of the lane in which it was. The two tires on the right rear wheel of the tractor (this is the plaintiff's description), that next the unpaved shoulder, were found to be flat after the collision, and this is the only reason

suggested by the evidence for the truck's being stopped. Although the sun was shining when the collision occurred, the flags required by Section 138(c) of Art. 6701d were not out. As Mr. Perkins remembered it, there was a reflector at the back of the trailer, but the plaintiff said that there were only two unlighted flare pots on the road, one in front of the truck and another, which had been run over, at about the middle of the truck or towards its back. The truck was unattended at the time of the collision, and a period of an hour and a half or longer elapsed after the collision before the defendant driver returned to the truck.

It seems plain that the truck had been parked by the defendant driver where it was.

The plaintiff, driving his own automobile from Houston to a destination in Louisiana and being alone in the car, approached the truck from its rear and collided with the left rear corner of the trailer for reasons which need not be stated. His car continued on across the road into the ditch on the left and, according to the plaintiff, stopped at a point about midway of the truck. Mr. Perkins said that it was about twenty or twenty-five feet beyond the front of the truck. At any rate, it was at or very near the place where the truck was stopped on the pavement. Plaintiff got out of his car when it stopped and walked down the road, in the direction in which his car and the truck had been proceeding, for a short distance to a filling station and grocery (this was a single place of business), and there he procured a messenger from whom, directly or otherwise, Mr. Perkins, a deputy sheriff of the adjoining county, learned of the collision. After talking with this messenger, the plaintiff returned to his car. Mr. Perkins arrived at the place of the collision about an hour after the collision occurred, and so did another person in an automobile wrecker, that is, a vehicle by which a damaged car could be taken away, and after this wrecker had removed the plaintiff's car, Mr. Perkins entered the truck and drove it to a paved place adjoining the filling station and there

parked it, completely off the road. He had no difficulty in driving it except such as resulted from the flat tires, and this obviously did not interfere materially with his movement of the truck. Sometime later the defendant driver returned to the truck.

Some other evidence is mentioned below.

## Opinion

The principal question disputed by the parties, and the only one which we need discuss, is whether the evidence supports an implied finding that the defendant driver's conduct respecting the truck was a violation of Section 93 of Art. 6701d. If it was, then Sections 22 and 143 of said statute made it a crime or offense within the meaning of Subdiv. 9 of Art. 1995 as that subdivision read before its 1953 amendment, and the trial court properly overruled the plea of privilege. See: McDonald's Texas Civil Practice, Sec. 4.16.

Defendant's contention that no breach of Section 93 was proved is based on this argument: The evidence, they say, is insufficient to show that it was "possible", within the meaning of that term as it is used in Section 93, for the defendant driver either to move the truck off the pavement onto the shoulder or to move it down the road to the filling station. Defendant's test of what is "possible" is, what a reasonably prudent person would have done. In substance, their contention seems to be, that under the circumstances such a person would have left the truck where the defendant driver did.

There was room on the shoulder for the truck and no obstruction there to a vehicle, but the shoulder, according to Mr. Perkins, was wet from rain and the truck was very heavily loaded; and Mr. Perkins said that he drove the truck away to the station instead of onto the shoulder because he thought it possible that the truck would bog or possible that the load would shift when the flat tires went upon the soft earth. However, the pavement itself was dry, and the shoulder could not have been very soft because Mr. Perkins said that he sent an empty truck (tractor and trailer)

around the defendants' truck by way of the shoulder; and Mr. Perkins' description of the condition of the shoulder indicates that he simply preferred to take no chances. The plaintiff said that he had not seen any truck go around the defendants' truck by way of the shoulder but he had seen a car do that, and it was his recollection that the shoulder was not wet. The trial court was authorized to conclude that Mr. Perkins' decision was influenced by the nearness of the filling station, and his testimony about the shoulder was, of course, only an opinion which the trial court had the right to test by the other circumstances of the case. On the whole, we think, the evidence would support an implied finding that the truck could have been parked on the shoulder.

But if it could not have been there is no valid reason why the driver should have left it where it was instead of driving it to the place where Mr. Perkins did. Defendants say that the evidence does not show that the driver could have seen the station from the truck, but we hold that it does. This station was only a short distance from the truck. Plaintiff estimated this distance at 500 or 600 feet, and Mr. Perkins estimated it at from 600 to 800 feet. Plaintiff said that the road was straight and level at the place of collision, and we have stated his testimony about walking to the station from his car. Plaintiff must have then have been suffering effects of the collision, and it is unlikely that he would have left his car to walk down the road unless he perceived some indication or evidence of the station. Otherwise, it seems that he would have stayed where he was and waited for a car to drive up; he said that the traffic on the road was heavy. The trial court was authorized to find that the station was visible from the truck. Driving the truck to the station might have injured or even ruined the two flat tires, but on the evidence this was not an excuse for leaving the truck in the road and subjecting the traveling public to the danger of such a collision as the plaintiff was involved in. Perhaps there will be situations in which a vehicle's tires ought to be protected at the expense

of such a risk to the public, but the case under review is not one of these.

■ It is unnecessary for us to define the term "possible" which is in Section 93. On the facts stated, the trial court could have found that a reasonably prudent person would not have left that truck on the pavement as the defendant driver did.

The order overruling the plea of privilege is sustained.